JHC

No. 5:09cr117-H

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| HAROLD EARL BLONDEAU | ) | |

The United States Attorney Charges that:

## INTRODUCTION

1.  Harold Earl Blondeau, defendant herein ("Blondeau" or "Defendant"), served as the financial and investment advisor for an individual known to the U.S. Attorney ("Individual A") from at least as early as 1988 through at least February of 2006. During that time, Individual A relied upon Blondeau to advise her regarding all of her financial concerns, including the investment of all funds and the management of her investments and other funds in a reasonable and proper manner.

2.  In 1989, Individual A became, and remains, the sole beneficiary of two trusts created by her now-deceased aunt. Both trusts require the trustee to pay the net income produced by the trusts' investments to Individual A at least quarterly. Additionally, the trusts allow the trustee to make distributions to Individual A from the principal of the trust under only very limited circumstances, to wit: as the trustee deems necessary in its discretion for Individual A's health, education,

maintenance and support during her lifetime. Neither trust allows the trustee to invade the trust principal for charitable contributions, gifts, or the like.

3. At Blondeau's advice and direction, and because he was employed there, Individual A requested that A.G. Edwards become Successor Trustee of the two trusts. A.G. Edwards was appointed as Successor Trustee of the two trusts and handled all the investments and administration of the trust assets from approximately 1989 to 1997. The two trusts contained at least four million dollars ($4,000,000.00) at the time A.G. Edwards became Successor Trustee.

4. In March of 1997, Blondeau left his employment at A.G. Edwards and thereafter became a financial advisor and stockbroker at Morgan Keegan. Upon changing firms, Blondeau suggested to Individual A that she move her accounts and the administration of the two trusts to Morgan Keegan. Blondeau continued to provide financial and investment services to Individual A in the course and scope of his employment with Morgan Keegan and Regions Bank, which owns Morgan Keegan and which conducts trust administration services using the name "Regions Morgan Keegan Trust FSB," and which became Successor Trustee of the two trusts, taking over the trust administration from A.G. Edwards.

5. On August 21, 2001, Individual A, whose cognitive functions were beginning to decline due to early-stage Alzheimer's disease, executed a Will, a Health Care Power of Attorney, and a

2

durable financial Power of Attorney. Blondeau was appointed under the financial Power of Attorney to serve as Individual A's attorney-in-fact and, by virtue of this document, he was given the authority to make any and all financial decisions for Individual A.

6. Also in 2001, Blondeau incorporated a non-profit foundation in Florida, ("the Foundation"), named after Individual A's father. The Foundation was created to address the fact that for several years, AG Edwards had failed to distribute income to Individual A from the trusts' investments. The distribution of this seven-figure amount presented problems regarding tax liability as well as other difficulties that would arise from the sudden distribution of this lump sum. Accordingly, the Foundation was established and would be initially funded with this undistributed income. Blondeau was named as President of the Foundation.

## The Scheme to Defraud Individual A

7. The essence of the Defendant's scheme to defraud Individual A was his abuse of the fiduciary relationship and position of trust that he had established with Individual A. As a matter of pattern and practice, the Defendant concealed from Individual A the true nature of many transactions he facilitated related to the trust accounts and Individual A's personal account, whereby the Defendant was able to secure, without Individual A's knowing permission, the release of funds from the accounts, which he then converted to his own personal use.

3

## Transactions in Furtherance of the Scheme

8. On July 31, 2003, Regions Bank disbursed the sum of Twenty Thousand dollars ($20,000.00) from the trusts and made a check payable to Wachovia Bank. Instead of this money being spent for the care and benefit of Individual A, the Defendant received this sum and kept it for his personal benefit. The Defendant orchestrated this transfer to be made payable to Wachovia Bank in order to conceal the fact that he was the real recipient of this amount.

9. In November, 2003, the Defendant drafted and prepared a written request for Individual A's signature, and obtained her signature on the same, requesting that Regions Bank, as Trustee, disburse the sum of Sixty-Three Thousand dollars ($63,000.00) from one of the trusts to Individual A's personal account at Morgan Keegan. On or about November 14, 2003, Regions Bank, as Trustee, deposited the sum requested by the Defendant into Individual A's personal bank account with Morgan Keegan.

10. Thereafter, on November 18, 2003, Morgan Keegan transferred the sum of Forty Thousand dollars ($40,000.00) from Individual A's account to the Foundation. On that same day, November 18, 2003, Morgan Keegan disbursed the sum of Twenty-Three Thousand dollars ($23,000.00), made payable to Wachovia Bank. Instead of this money being spent for the care and benefit of Individual A, the Defendant actually received this sum and kept it

4

for his personal benefit. The Defendant orchestrated this transfer to be made payable to Wachovia Bank in order to conceal the fact that he was the real recipient of this amount.

11. In six months, from June, 2003, through December, 2003, the Defendant, using Individual A's Morgan Keegan check card, spent a total amount of Eleven Thousand Fifty-Three and 13/100 dollars ($11,053.13) from Individual A's personal account on wine purchases from four different wine companies. All four of these wine companies accept orders for wine over the Internet and the Defendant used Individual A's check card and received the benefit of these transactions without her knowledge or authority.

12. On February 22, 2004, Morgan Keegan transferred from Individual A's personal account the sum of Forty Thousand dollars ($40,000.00). Instead of this money being spent for the care and benefit of Individual A, the Defendant actually received this sum and kept it for his personal benefit. The Defendant orchestrated this transfer in order to conceal the fact that he was the real recipient of this amount.

13. On May 14, 2004, the Defendant drafted and prepared a written request, and apparently obtained Individual A's signature on it through the use of false pretenses and other fraudulent means. This document falsely and fraudulently stated that Individual A was purchasing a cottage at the coast in Morehead City, North Carolina. The document requested Regions Bank, as

5

Trustee, to wire transfer the sum of Three Hundred Fifty Thousand dollars ($350,000.00) to a real estate attorney chosen by the Defendant for use at closing of the sale.

14. On May 14, 2004, a written request drafted and prepared by the Defendant represented that Individual A wanted to use the $350,000.00 to buy a beach cottage since she was allowing her son and his wife to use the condominium owned by the trusts. This representation was materially false and known by the Defendant to be false at the time this representation was made. In truth, this money was to be used by the Defendant to buy a vacation residence in Morehead City, North Carolina for his separate use and enjoyment.

15. In six months, from June of 2004, through December of 2004, the Defendant, using Individual A's Morgan Keegan check card, spent a total amount of Seven Thousand Two Hundred Twenty-Eight and 07/100 dollars ($7,228.07) from Individual A's personal account on wine purchases from four different wine companies. These wine companies accept orders for wine over the Internet and the Defendant used Individual A's check card without her knowledge or authority and received the benefit of these transactions.

16. On February 7, 2005, the sum of Fifteen Thousand dollars ($15,000.00) was transferred from Individual A's personal account at Morgan Keegan. This $15,000.00 was paid to the Defendant and received by him in such a manner as to conceal the

6

fact that he was the real recipient of this amount.

17.  On February 15, 2005, the sum of Twenty-Five Thousand dollars ($25,000.00) was transferred from Individual A's personal account at MORGAN KEEGAN.  This $25,000.00 was paid to the Defendant and received by him in such a manner as to conceal the fact that he was the real recipient of this amount.

## False Tax Returns

18.  During the fraudulent receipt of Individual A's money, the Defendant failed to include the funds transferred for his own benefits as income in his own returns.

## **Statutory Allegations**

### **Count One:**

### **(Investment Advisor Fraud, 15 U.S.C. §§ 80b-6 and 80b-17)**

1.  The allegations in Paragraphs 1-18 in the Introduction above are hereby incorporated by reference.

2.  At all times material to this charge, HAROLD BLONDEAU, defendant herein, was an investment adviser, as defined in Title 15, United States Code, Section 80b-2(a)(11).

3.  Between in or about 2001 and continuing until in or about 2005, in the Eastern District of North Carolina and elsewhere, HAROLD BLONDEAU, defendant herein, did use the means and instrumentalities of interstate commerce to willfully engage in a practice and course of business which operated as a fraud and deceit upon his client, Individual A.

7

4. All in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

## Count Two:

### (Making and Subscribing a False Return, 26 U.S.C. § 7206(1))

1. The allegations in Paragraphs 1-18 in the Introduction above are hereby incorporated by reference.

2. On or about May 31, 2005, in the Eastern District of North Carolina and elsewhere, HAROLD BLONDEAU, defendant herein, did willfully make and subscribe a federal tax return which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter, in that the return filed with the Internal Revenue Service failed to report the following income, and the defendant then and there knew of such unreported income:

| CALENDAR YEAR | UNREPORTED TAXABLE INCOME | ADDITIONAL TAX DUE | FILING DATE (APPROX.) |
|---|---|---|---|
| 2004 | $447,228 | $155,213 | 05/31/2005 |

3. All in violation of Title 26, United States Code, Section 7206(1).

JOHN S. BRUCE
First Assistant United States Attorney

BY: JASON N. COWLEY
Assistant United States

8